## SCHOOLS—CONSTITUTIONAL LAW.

[Lucas Circuit Court, March 9, 1901.]

STATE EX REL. WARD V. FRANKLIN HUBBARD, CLERK, ETC., ET AL.

1. LAWS RELATING TO SCHOOLS ARE GENERAL LAWS.

The common schools are recognized and provided for in the constitution of the state and are institutions in which every community and every citizen is interested. Laws relating thereto are, therefore, of a general nature.

2. PHRASE IN 92 O. L., 683, CONSTRUED.

The phrase " paid to all teachers in city districts of the third grade of the first class " in act 92 O L., 683, relating to a teacher's pension fund in Toledo, should be construed to mean and to read " school districts in cities of the third grade of the first class," and limits the application to that city.

3. LACKS UNIFORM OPERATION AND IS UNCONSTITUTIONAL.

The act 92 O. L., 683, to create a school teachers' pension fund, in cities of the third grade, first class, and making it the duty of the proper officers of the board of education to deduct one per cent. of the salaries paid to all teachers, and pay the same into the city treasury to the credit of the " school teachers' fund," is in conflict with Sec. 26, Art. 2, of the constitution providing that all laws of a general nature shall have a uniform operation throughout the state. Said act prescribing that the same shall take effect September 1, 1897, and requiring the board of education to select three members at its first regular meeting after such date, and requiring the teachers to elect three members within thirty days after the act goes into effect, who, with the superintendent, shall constitute the board of trustees of the school teachers' fund, there being

but one such city to which the act could apply when it went into effect, or to which it could apply, within the time designated for the selection of such trustees, and there being no provision for cities which might afterwards come into this class. It cannot, therefore, be sustained on the ground that other cities might subsequently come within the class.

4. LACKS UNIFORMITY IN TAXING.

A law which imposes the burden of taxation upon teachers as a class of citizens for the purposes of a teachers' pension fund, is not taxing by a uniform rule, as required by Sec. 2, Art. 12, of the constitution. Therefore the act, 92 O. L., 683, constitutes a taking of private property without due process of law and is invalid on that ground.

5. DEDUCTION FROM SALARY NOT DEDUCTION FROM PUBLIC FUND.

A deduction of the money from a teacher's salary is not a deduction from a public fund, on the theory that teachers receive so much less salary, and can not be sustained on that ground. A teacher's salary is his own property and he has the constitutional right to use it for his own benefit or for the benefit of others, as he may see fit.

6. MEMBERSHIP ON PENSION BOARD DOES NOT ESTOP CONTEST.

The fact that a teacher has been elected a member of the pension board under the provisions of act 94 O. L, 683, does not estop him from attacking the validity of the act, particularly where he appears to have constantly been opposed to its enforcement from its enactment, never lost an opportunity to state his opposition to it, and was elected by three-fourths of the teachers as their representative in opposing the act.

7. ACCEPTANCE OF POSITION WITH NOTICE DOES NOT ESTOP.

Nor will the fact that a person accepted a position as teacher under notification in writing that his appointment was subject to the provisions of law and rules of the board which might be enforced relating to the appointment and compensation of teachers, estop him from attacking the constitutionality of the act in question, for he accepted the position subject only to valid and constitutional laws of the state.

8. MANDAMUS LIE TO COMPEL FULL PAYMENT.

Mandamus will lie to compel the president and business manager and clerk of the board of education of Toledo to sign and issue a warrant upon its treasurer for the full amount of salary coming to a teacher, without deducting any part thereof, to apply to the school teachers' fund authorized by act 94 O. L., 683, the act being unconstitutional.

*I. N. Huntsberger*, for the plaintiff, cited:

Laws of a general nature: Silberman v. Hay, 59 O. S., 582 [53 N. E. Rep. 258]; Cincinnati v. Steinkamp, 54 O. S., 284, 294, 295 [43 N. E. Rep. 490]; Kenton v. State, 52 O. S., 59; State v. Davis, 55 O. S., 15 [4 N. E. Rep. 511]; Mott v. Hubbard, 59 O. S., 210; Alter v. Cincinnati, 56 O. S., 47 (s. c. 5 Circ. Dec., 356; 12 R. 119); Adams v. Nemeyer, 54 O. S., 614 [46 N. E. Rep. 1154; Commissioners v. Rosche Bros., 50 O. S., 103, 113, 115 [33 N. E. Rep. 408; 19 L. R. A. 584]; State ex rel. v. Bargus, 53 O. S., 94, 108 [41 N. E. Rep. 245; 53 Am. St. 628]; State v. Buckley, 60 O. S., 272 [54 N. E. Rep. 272]; State v. Gardner, 58 O. S., 599, 609, 610 [51 N. E. Rep., 136; 65 Am. St. 785]; State v. Kurtz, 11 Dec. — [8 N. P. 152]; Karb v. State, 54 O. S., 383, 391 [43 N. E. Rep. 920]; Hixon v. State, 54 O. S., 470, 483 [43 N. E. Rep. 1000]; Gaylord v. Hubbard, 56 O. S., 25, 35 [46 N. E. Rep. 66]; State v. Cowles, 63 O. S.; State ex rel. v. Brown, 60 O. S., 462, 470, 471 [54 N. E. Rep. 525]; Sutherland Constitutional Limitations, 162, *et seq.*; State v. Ellet, 47 O. S. [23 N. E. Rep. 931; 21 Am. St. 772]; Ex parte Falk, 42 O. S., 638; State v. Winch, 45 O. S., 663 [18 N. E. Rep. 380]; State v. Smith, 48 O. S., 211 [26 N. E. Rep. 1069]; State v. Tooker, 8 Circ. Dec., 56 [16 R. 647]; Diemer v. Hudson, 9

State v. Hubbard.

Circ. Dec., 858 [18 R. 890; see also 21 R. 82]; Emery v. Coles, 7 Dec., 414 [5 N. P. 199]; Hall v. Kleeman, 6 Dec., 323 [4 N. P., 201]; Cincinnati v. Ehrman, 9 Dec., 1 [6 N. P., 169].

Special or local form of act in question: Mott v. Hubbard, *supra*; Pittsburg, etc., R. R. Co. v. Martin, 53 O. S., 386 [41 N. E. Rep. 690]; Kenton v. State, *supra*; State v. Pugh, 43 O. S., 98 [1 N. E. Rep. 439]; State v. Constantine, 42 O. S., 437 [51 Am. Rep., 833]; State v. Mitchell, 31 O. S., 607; Ex parte Falk, *supra*; State v. Winch, *supra*; State v. Ellet, *supra*; State v. Smith, *supra*; Costello v. Wyoming, 49 O. S., 202 [30 N. E. Rep. 613]; State v. Gardner, 4 Dec., 34; Hermann v. Cincinnati, 6 Circ. Dec., 151 [9 R. 357], affirmed 52 O. S., 676, without report; State v. Cowles, *supra*.

Judicial notice that act cannot apply to other cities: State v. Constantine, *supra*;

For purposes of legislation of a general nature, it is not permissible to classify school districts any more than counties or townships, according to grade or class of cities therein: State v. Cowles, *supra*; State v. Buckley, 60 O. S., 272, 297; Commissioners v. Rosche, Mott v. Hubbard, Silberman v. Hay, Cincinnati v. Ehrman, Ex parte Falk, State v. Ellet, Costello v. Wyoming, State v. Gardner, *supra*;

Must be reasonable basis for classification: Costello v. Wyoming, *supra*; State v. Anderson, 44 O. S., 247 [6 N. E. Rep. 571]; State v. Pugh, *supra*; State v. Baker, 55 O. S., 1, 10 [44 N. E. Rep. 516]; Kenton v. State, *supra*; State v. Smith, *supra*; In re Preston, 64 O. S.; Yeagill v. State, 10 Circ. Dec., 794 [20 R. 646].

Act violates Secs. 1, 2, 7, 16 and 19, Art. 1, and Sec. 2, Art. 12 of the constitution; State v. Ferris, 53 O. S., 314 [41 N. E. Rep. 579]; Gaylord v. Hubbard, *supra*; Hixon v. Burson, 54 O. S., 486; Karb v. State, 54 O. S., 391; Wasson v. Commissioners, 49 O. S., 622, 636 [32 N. E. Rep. 472; 17 L. R. A. 795]; Silberman v. Hay, 59 O. S., 582; State v. Guilbert, 56 O. S. 575, 616, 623, 627 [47 N. E. Rep., 551; 38 L. R. A. 519]; State v. Gardner, *supra*;

Uniform taxation—Class legislation: Bank v. Hines, 3 O. S., 1, 15; Coal Co. v. Rosser, 53 O. S., 12, 23, 24 [41 N. E. Rep. 263; 53 Am. St. 622].

Property cannot be taken without compensation: State ex rel. v. Bader, 56 O. S., 780 [47 N. E. Rep. 564]; 60 O. S., 584 [54 N. E. Rep. 1110]; Wasson v. Commissioners, *supra*; State ex rel. v. Bader, 5 Circ. Dec., 703 [12 R. 659]; Hubbard v. Fitzsimmons, 57 O. S., 436 [49 N. E. Rep. 477]; Sutherland Innes Co. v. Evart (Vil.), 86 Fed. Rep. 597; Tiedeman Mun. Cor., Sec. 254; State v. Guilbert, State v. Gardner, Alter v. Cincinnati, *supra*.

Taxation—Unconstitutional laws: Phila. Association v. Wood, 39 Pa. St., 73; Henderson v. Insurance Co., 135 Ind., 23 [34 N. E. Rep. 565]; State v. Insurance Co., 12 La. Ann., 802; State v. Guilbert and State v. Gardner, *supra*.

Act is mandatory and violates right of self government: State v. Commissioners, 54 O. S., 333, 340, 342 [43 N. E. Rep. 587]; Commissioners v. State, 50 O. S., 653, 661, 662; Zanesville v. Telephone and Tel. Co., 63 O. S., 402; 64 Ib.; Cooley on Const. Lim. (6 ed.), 207, 223; *contra*, State ex rel. v. Commissioners, 35 O. S., 458, 467.

Uniform laws required as to licensing, hiring, paying and pension.ing teachers: State v. Shearer, 46 O. S., 275, 280, 281 [20 **N. E. Rep**-

335]; State v. Powers, 38 O. S., 54; State v. Best, 55 O. S. 638 [48 N. E. Rep. 1118]; State v. Ellet, *supra*.

Relator without remedy at law: Selby v. State, 64 O. S.; State v. Auditor, 43 O. S., 311, 319, 321 [1 N. E. Rep. 209]; State v. Williams, 29 O. S., 161; State v. Cleveland, 10 Dec. (Re.), 571 [22 Bull. 113, 115]; Ryan v. Hoffman, 26 O. S., 109; Commissioners v. Hunt, 33 O. S., 169; State v. Burgoyne, 7 O. S., 153; Commissioners v. Auditor, 1 O. S., 322, 326; State v. Board of Ed., 35 O. S., 368; State v. Comrs., 26 O. S., 364; Ex parte Scott, 19 O. S., 581; State v. Moser, 4 Circ. Dec., 557 [12 R. 247]; State v. Kurtz, *supra*.

Duty sought to be enforced results from office trust or station: State v. Halliday, 61 O. S., 171 [55 N. E. Rep. 175]; State v. Jennings, 57 O. S., 415, 422, 424 [49 N. E. Rep. 404]; State v. Brennan, 49 O. S., 33 [29 N. E. Rep. 595]; State v. Wilson, 29 O. S., 347; State v. Kearns, 47 O. S., 566 [25 N. E. Rep. 1027]; State v. Rust, 2 Circ. Dec., 577 [4 R. 329, 332]; Meacham, Off. & Offrs. Sec. 4; High, Legal Rem., Sec. 625; Commissioners v. Cambridge, 3 Circ. Dec., 669 [7 R. 72, 82]; State v. Staley, 3 Circ. Dec., 294 [5 R. 602, 605].

Relator not estopped: Lewis v. Symmes, 61 O. S., 471 [56 N. E. Rep. 194]; Mott v. Hubbard, *supra*; Columbus v. Agler, 44 O. S., 485, 486 [8 N. E. Rep., 302]; Wright v. Thomas, 26 O. S., 346; Teegarden v. Davis, 36 O. S., 601, 603; Stephan v. Daniels, 27 O. S., 527, 544, 546, Lear v. Halstead, 41 O. S., 566, 572; Tone v. Columbus, 39 O. S., 281; 301, 303, [48 Am. Rep. 428]; Tone's Exrs. v. Columbus, 1 Circ. Dec., 168 [1 R. 305]; Laylin v. Huron Co., 2 Circ. Dec., 193 [3 R. 338, 360, 363].

*Chas. K. Friedman*, for the defendants.

HULL, J.:

This is an action for a writ of mandamus. The relator, John I Ward, was in the employ of the board of education of the city of Toledo as a teacher in the district schools, at a salary of $1,200 a year, and as a teacher in the night schools at a salary of $3.00 per week during the period in question, teaching two nights in a week, making $12 00 for the four weeks, or month, of service in the night schools. He brings his action in mandamus to compel Mr. Hubbard, the business manager and clerk of the board of education, and John W. Dowd, president of the board, to sign and issue to him a warrant upon the treasurer for the salary coming to him, viz.: $24 00; he having demanded a warrant for this amount, and it being refused, upon the ground that under the school pension law, as it is called, they were authorized and required to deduct from that amount one per cent. thereof, to-wit, twenty-four cents for the pension fund, and a warrant for the balance was tendered to Ward, which he refused, and he brings this action for a writ of mandamus to compel the warrant to be issued to him for the full amount.

The amount involved in this action is very small, but the action involves the validity of the pension statute, the relator claiming that it is unconstitutional and void, the defendants insisting that it is a valid and constitutional act, and further that the defendant, in any event, has acquiesced therein and agreed thereto, and to the provisions thereof, and acted in such a way that he is estopped from denying its validity.

The constitutionality of the act is attacked upon the ground that it is in conflict with Sec. 26, Art. 2, of the constitution, providing that all laws of a general nature shall have a uniform operation throughout the

State v. Hubbard.

state, and on the ground that it is in conflict with the provisions of the bill of rights of the state, in that it takes private property from its owner without just compensation and without due process of law.

The act is found in 92 O. L., 683, and it provides, in the first section:

"That in order to create a fund to be known as the school teachers' pension fund, one per cent. (1%) of the salaries paid to all teachers of city districts of the third grade of the first class, shall be deducted by the proper officers and paid into the city treasury to the credit of said fund, to be used exclusively for pensions for teachers as hereinafter provided. All moneys received from donations, legacies, gifts, bequests or from any other source shall also be be paid into said fund, but no taxes shall be levied or any public moneys be appropriated for said fund, except as herein provided."

And the next section of the act provides for the selection of a board, by the board of education, to be known as the board of trustees of the school teachers' fund, which the act provides, shall be composed of seven members, three to be elected by the board of education, three to be elected by the teachers of the public schools and the superintendent of schools who, the act provides, shall be *ex officio* a member of said board.

The section further provides that:

"The board of education of said city district shall, at its first regular meeting after this act goes into effect, elect three of its members for one year, one for two years, and one for three years and thereafter annually elect one of its members for three years, who shall serve as members of said board."

The act provides as to the pensioning of teachers, that after a teacher, either male or female, shall have taught for a period aggregating twenty years, he or she may be retired and put upon the pension list by the board of education, on account of physical or mental disabilities, and provides that any female teacher shall have the right to retire after she shall have taught for a period aggregating thirty years, whether before or after, or partly before or after the passage of this act; and any male teacher shall have a right to retire and become a beneficiary under this act who shall have taught for a period aggregating thirty-five years, whether before or after, or partly before or after the passage of this act; provided that three-fifths of said term of service shall have been rendered in the public schools of said city or district, or in the public schools of the county in which said district is located.

The act further provides that:

"Each teacher so retired or retiring shall be entitled during the remainder of his or her natural life to receive as pension an amount equal to one-half of the annual salary paid to such teacher at the date of his or her retirement, said pension to be paid monthly during the school year, but in no event shall such pension paid to any teacher exceed the sum of six hundred dollars in any one year."

It also provides for a *pro rata* division of the pension fund should there not be sufficient at any time to pay all of the pensions that are due. The last section provides for sick benefits, or the pensioning of teachers for a period not to exceed ten months, who have been temporarily disabled by accident or sickness, provided that they shall have taught ten years in the schools of the city district.

This section reads as follows:

"The death, resignation or removal of any teacher for cause, as aforesaid, shall terminate all interest of said teacher in said fund, but it shall be optional with the board of trustees of said pension fund to appropriate monthly to any teacher who has become disabled by accident or sickness to such an extent as to be incapacitated for teaching, a sum not to exceed one-half of said teacher's regular monthly salary, provided that said teacher shall have taught at least ten years in the public schools of a city district of the third grade of the first class, and providing that such monthly appropriation shall not continue for a longer period than ten months or one school year."

As I have said, the act is attacked upon the ground, first, that it violates a provision of Sec. 26, Art. 2, of the constitution, which is in this language: "All laws of a general nature shall have a uniform operation throughout the state."

This provision of the constitution has been before the Supreme Court a great many times and it will not be necessary in deciding this case to review all of the decisions that have been rendered upon it by the court, nor any great part of them Was this law one of a general nature? It is a law which relates to the common schools, that are recognized and provided for in the constitution of the state and constitute an institution in which every community and every citizen is interested, one of the public institutions of the state, and whether a law is or is not one of a general nature, as the Supreme Court has said, is to be determined by the subject-matter of the law. In Kelley v. State, 6 Ohio St., 269, 271, of the opinion the Supreme Court say:

"We have then in the constitution, first, a general, unqualified and positive prohibition or limitation of legislative power, forbidding the giving of a partial operation to any law of a general nature, or in its own affirmative terms, requiring that a uniform operation throughout the state shall be given to all laws of a general nature. Without undertaking to discriminate nicely or define with precision, it may be said that the character of a law as general or local depends on the character of its subject-matter. If that be of a general nature, existing throughout the state, in every county, a subject-matter in which all the citizens have a common interest—if it be a court organized under the constitution and laws within and for every county of the state, and possessing a legitimate jurisdiction over every citizen, then the laws which relate to and regulate it are laws of a general nature, and by virtue of the prohibition referred to, must have a uniform operation throughout the state.

A law relating to the public schools, an institution in which every citizen of the state is entitled to participate and enjoy, is a law of a general nature under this definition of the Supreme Court, and therefore the act under consideration is one of a general nature.

The question, then is, whether the act by its terms comes within the prohibition of the constitution or of the requirement of the constitution that all laws of a general nature shall have a uniform operation throughout the state.

The language of the act is a little obscure; the language in the first section referring to the salaries of teachers, " paid to all teachers of city districts of the third grade of the first class," etc. We hold that that should be construed to mean and should read " School districts in cities of the third grade of the first class," following the decision of this court in State v. Board of Elections, 8 Circ. Dec., 215 (16 R., 1), where the same or similar language was construed by the court. Putting that con-

struction upon it, the act then was intended to apply only to school districts in cities of the third grade of the first class. While at that time there was only one city, viz., the city of Toledo, that fell under that description, yet other cities might in time, by change in population and proper municipal action, have come into this class, and so far as this description was concerned would and might have been subject to the provisions of this law.

The Supreme Court in many cases has discussed the classification of cities and many laws that appeared to be special in their character so far as they confer power have been sustained by the Supreme Court upon this doctrine and theory of the classification of cities and they have been held to have, under this doctrine, a uniform operation throughout the state, in that they applied to all cities, present and future, of the grade and class mentioned in the act.

The trend of the recent decisions of the Supreme Court seems to be to hold rather more strictly to an enforcement, if that be the proper word to use, of this provision of the constitution prohibiting legislation of this kind. In Commissioners v. Rosche Bros., 50 Ohio St., 103 [33 N. E. Rep., 408; 40 A. S. Rep., 653], in discussing an act to provide for the refunding of taxes erroneously paid and affecting in its terms only the county of Hamilton, the Supreme Court say in the second paragraph of the syllabus:

"The subject of the act is in no respect local, but is of general interest to all the inhabitants of this state, and special legislation thereon is prohibited by Sec. 26, Art. 2, of the constitution of this state, which requires all laws of a general nature to have a uniform operation throughout the state."

And, on page 113, the court say, in the opinion:

"The subject of the statute under consideration is the right of the taxpayer, who has paid taxes upon property exempt from taxation, to recover from the public the money thus paid, and its object is to ameliorate the supposed harshness of the existing law in this particular. The rights of the taxpayer in this respect should be uniform throughout the state, which rusult can be attained only by a statute designed to operate impartially upon every person who may bring himself within its beneficent provisions."

And at the bottom of page 114:

"And whatever amelioration of the hardships of the existing law in this respect, that the legislature in its wisdom deemed just and right, should have been extended to the whole people of the state without regard to the county boundaries. Otherwise there might be as many different laws on the subject as there are counties within the state, and an action to recover taxes paid in one county could be maintained upon a state of facts that in an adjoining county would be wholly inadequate for that purpose. This want of uniformity in the laws prescribing the rights and obligations of the inhabitants of the state was the very mischief that Sec. 26, Art. 2, was designed to prevent."

I call attention to a few of these recent cases for the purpose of showing what seems to be the disposition of the Supreme Court at this time as to this class of legislation. There is another case in State v. Bargus, 53 Ohio St., 94 [41 N. E. Rep., 245; 53 A. S. R. 628], where it was sought by an amendment to an act to abolish boards of infirmary directors in the counties of Erie and Huron, describing them by their

population at the last preceding federal census, and the court say in the syllabus:

" Laws providing for the public support of the poor are of a general nature."

And on page 109 Judge Shauck rendering the opinion of the court, says:

" The case does not call upon us to determine whether the requirement of uniform operation forbids the reasonable classification of counties upon substantial differences in population. Isolation is not' classification. The appearance of general and uniform legislation sought to be imparted to the act by the figures employed in the descripnion of these counties and the regard that is paid to changes in population which may be disclosed by a subsequent federal census, do not at all affect the character of the act. Its validity must be determined, not by its form, but by its substance and practical operation. It provides exceptional legislation on the basis of a difference in population so trivial that no one supposes it to be the real ground of the distinction and it applies to no counties but to Erie and Huron.

With the wisdom of the policy which the general assembly has, through the provisions of this act, attempted to establish in the two counties named, we have nothing to do. If it be unwise, this section forbids its application to Erie and Huron counties except by a law of uniform operation throughout the state which shall affect the interests of all constituencies and thus challenge the attention and judgment of all representatives. If it be wise, this section beneficently requires that the people of the whole state shall share in its benefits. We are aware of no decision of this court in conflict with these views. "

I call attention also to the case of Cincinnati v. Steinkamp, 54 Ohio St., 284 [43 N. E. Rep., 490]. On page 295 of the opinion, the Supreme Court say:

" And it would seem to follow from this that the constitutional requirement of uniform operation throughout the state is not answered by showing that the law is of uniform operation within one city of the state only, however populous, and even though described as a city of the first grade of the first class, if it appears that the act does not confer power, corporate or administrative, and that the conditions undertaken to be legislated upon are common to other sections of the state generally."

And there is a full discussion of the question in this decision.

Now I have read these extracts from these decisions, for the purpose rather of illustrating the present tendency of the Supreme Court and the discussions that have taken place in these recent cases on this question of special legislation.

There is in this act under consideration, however, a provision which confines it strictly, as it seems to us, and wholly to the one city of the third grade of the first class that was in existence at the time of the passage of the act—the city of Toledo, and which prohibits the act from ever applying to any other city of the state that may come into this class hereafter and that is the provision in 92 O. L., 683, Sec. 2 of the act which provides:

"The board of education of said city district shall, at its first regular meeting after this act goes into effect, elect three of its members, one for one year, one for two years, and one for three years and thereafter annually elect one of its members for three years, who shall serve as

members of said board; the teachers of the public schools of said city district shall within thirty days after this act goes into effect &ast; &ast; &ast; elect three of their number," etc.

And the act provides at the end that it shall take effect and be in force from and after September 1, 1897. By these provisions, then, the board of education under this act was required to select three members of this committee or board at its first regular meeting after the act took effect, and the teachers were required to select three members within thirty days after the act went into effect. At the time this act went into effect there was but one city, the city of Toledo, to which it could apply. And within the period designated for the action of the board and of the teachers there was but the one city to which the act could apply. The act makes no provisions for cities which may come into this class thereafter, but it requires that this action shall be taken by the board of education and the teachers within this limited period after the act goes into effect.

It is argued that this might apply to any city that came into the class at any time thereafter: that the language of the act might be so construed as to include such cities and that the boards in such cities and the teachers might take action after they came into the class designated, but we do not so construe this act. It is contrary to the plain language of the act itself, which provides that such action shall be taken within a certain time after the act goes into effect. The language of the act itself and its title, seem to indicate that it was intended by the legislature that it should apply only to the city of Toledo. This act not only did not apply to any city in the state but Toledo at the times of its passage and taking effect, but it could never apply in the future to any other city. The subject-matter of the act is one of a general nature, and in which all the people of the state are interested. It comes within both the language and the spirit of this provision of the constitution. If it is well for the schools of the city of Toledo to have a system of pensions, if it is better for the teachers and the people of this city to have such a system, then it would be better for the people of any such city or of the cities generally of the state. There are no considerations in this matter, at least none called to our attention, that apply especially to the city of Toledo.

A similar act has very recently come before the circuit court of Cuyahoga county, and an act somewhat similar, has very recently been passed upon by the Supreme Court of the state, and in each case the act was held to be unconstitutional. The Cuyahoga county case involved a teachers' pension law applying to the city of Cleveland. It first came before Judge Wing of the common pleas court of Cuyahoga county, and now judge of the district court of the United States, and was by him declared to be unconstitutional upon the ground that it violated this provision of the constitution and violated the further provision of the constitution against the taking of private property without due process of law. The syllabus of Judge Wing's decision in State v. Kurtz, 11 Dec. 266 (8 N. P.; 152), is:

"The act of April 10, 1900, &ast;94 O. L., 539, providing for the creation of a fund for pensioning teachers in the city of Cleveland, by withholding a certain percentage from the salary of teachers, is unconstitutional, in that it takes from said teachers, property without due process of law, and because it is a law of a general nature, which should not be confined to the city school district of Cleveland."

The decision of the same case in the Cuyahoga circuit court will be found in 11 Circ. Dec., 705 (21 R., 261). The syllabus, paragraphs 1, 2, 3 and 4, is as follows:

"1. Laws relating to the subject-matter of education and the efficienecy of our public school system, both from the vital interest which all people of the state have in them, as well as from the provisions of Sec. 2, Art. 6, of the constitution, are of a general nature.

"2. The act of April 10, 1900, 94 O. L., 539, providing for the creation of a pension fund for the pensioning of teachers in city districts of the second grade of the first class, and making it the duty of the treasurer of the board. of education in such cities to reserve ten per cent. of teachers' salaries for such purpose, is within the inhibition of Sec. 26, Art. 2 of the constitution, providing that all laws of a general nature shall have uniform operation throughout the state, and is invalid, there being but one such city in the state.

"3. Section 6 of act 94 O. L., 539, relating to the creation of a teachers' pension found in cities of the second grade of the first class, in providing that the retiring board therein provided for shall be held in September, 1900, determines the fact that no other city which is not of the class and grade named in the act at that time could ever come within its provisions, and therefore renders the law unconstitutional as lacking uniform operation throughout the state.

"4. The law in question, being applicable to but one city in the state, cannot be upheld on the ground that it adds to the efficiency of the public school system, in making provision for teachers who, during long years of service, have given their best efforts to the betterment of ociety. That argument bears directly upon and supports the proposition that the law is of a general nature and should have uniform operation throughout the state."

The Cleveland act provided for action being taken by the board upon a certain date mentioned in the act, while the act under consideration provides for action being taken as I have pointed out at the first regular meeting after the act goes into effect. It seems to us that the result is the same and that this act is by such terms confined to the city of Toledo exclusively, as was the act under consideration in Cleveland confined to that city. The Supreme Court, in the Cleveland "Park Case" as it is called, very recently held a statute, containing a similar provision, unconstitutional. I refer to State ex rel. v. Cowles, 64 Ohio St., 162. Judge Schauck, in delivering the opinion of the court, says:

"We are not now to test these acts by our knowledge of their actual operation, but we are to imagine that the classification is to remain unchanged indefinitely, so that without limit of time other municipalities may enter the same grade and class with Cleveland and so become subject to all legislation which is valid as to that city, and then inquire whether all the cities which may enter said grade and class will become subject to the acts now under consideration. In the first section of the act of April 6, it is provided that the first election of the board of park commissioners shall be held on the first Monday of April, 1901, and of course it can operate only in cities which on that day are in the second grade of the first class. In the brief of counsel for the defendant this point is met with the suggestion that under existing statutes the cities of Toledo and Columbus, having the population required to advance them to the second grade of the first class, might by their voluntary action effect such advancement so that they might be, or at least they might

State v. Hubbard.

have been, advanced before the first Monday of April, 1901, and there would be three cities subject to the operation of this legislation. In the view we are now taking of the subject this suggestion of the imagination is legitimate, but it is manifestly inadequate. It assumes that the doctrine of classification will be satisfied if the legislation applies to a plurality of the cities belonging to the grade and class. The doctrine is not quite so bad as that. It is of its essence that every municipality in the state now below the first class may be advanced to the second grade of the first class upon its attaining the requisite population and taking appropriate action for that purpose, and that every one of them, when so advanced, without limit as to their numbers or the time of their advancement shall become subject to every legislative act which is now valid as to that grade and class. It is therefore, quite evident that at this point the imagination of the framer of these acts varied in its flight and failed. That the city of Cleveland alone was in contemplation in this act is quite evident from others of its provisions which are set out in the statement of the case.

"Because the doctrine of classification of cities is not to be extended, this legislation is void in view of others of its provisions. According to that doctrine such classification has been recognized as effective to prevent the present actual operation of the constitutional provision quoted, prohibiting conferring of corporate power by special acts ; and acts conferring such power have been held valid, although they actually conferred it upon but one city. But when that classification has been resorted to for the purpose of evading the requirement of Sec. 26 of article 2 of the constitution, that ' all laws of a general nature shall have a uniform operation throughout the state.' Its efficiency for that purpose has been denied. Commissioners v. Rosche Bros., 50 Ohio St., 103 [33 N. E Rep., 408, 40 A. S. Rep., 653] ; City of Cincinnati v. Steinkamp, Trustee, 54 Ohio St., 284 [43 N. E. Rep., 490]. "

While fully appreciating as we do the rule that a court should not declare a law unconstitutional where any doubt exists as to its validity, we do not forget the other part of the rule as laid down by our Supreme Court, that no higher duty of a court exists than to declare an unconstitutional law invalid, and in our judgment, this law is clearly unconstitutional, for the reason stated. But in so holding the court do not recede from nor intend to depart in any respect from the position taken in the cases of State ex rel. v. Jones, 11 Circ. Dec., 496, and Platt v. Craig, which were heard and decided together, and which have been cited by counsel for defendants. The bridge law, so-called, was sustained in this decision on the doctrine of classification, that act containing no such restrictive provision as the one incorporated in this law.

A majority of the court are also of the opinion that the law is unconstitutional upon another ground, in that it violates the provision of the constitution as to taxation and permits and requires the taking or private property without due process of law. Judge Parker, while concurring in the judgment of the court and not dissenting from this further ground, reserves his judgment thereon. Money taken from the teachers by virtue of this statute is either taxation for public good or it is the taking of money from one person for the benefit of another contrary to the will of such person from whom it is taken and without his consent.

The provision of the constitution as to taxation is found in Sec. 2, Art. 12. " Laws shall be passed taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies, or other-

wise," etc. Now if pension legislation is for the benefit of the public, for the public good, then money raised for such purposes can only be regarded as taxes and this money deducted from the teachers' salaries is a tax: it is taking a certain percentage of the money or property that they are entitled to, from month to month, for the public good, and if this pension legislation can be sustained and if a tax to raise pensions, can be levied, in our judgment, that tax should be levied upon all of the property and citizens owning property in the school district where the pension law is in force. A law which imposes the burden of taxation upon one class of citizens, to-wit, the teachers, cannot be called a law taxing by a uniform rule. If, on the other hand, the money so deducted is not to be regarded as taken for the public good, and as taxation, then it is the taking of private property from one citizen for the benefit of another, without his consent and against his will. The first section of the bill of rights provides :

" All men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property."

And Sec. 19 provides: " Private property shall ever be held inviolate."

It is argued in favor of this act that the one per cent. so taken and devoted to this purpose is not taken from the teachers or from their salaries, but is taken and should be held to be taken from the public funds; that the effect and result of the act is simply that the teachers are paid that much less in salaries ; but this argument is contrary to the express language of the statute (92 v. 683) which provides, in the first section : " One per cent. of the salaries paid to all teachers  *  *  * shall be deducted by the proper officers and paid into the city treasury," so that the statute by its own terms and express language provides that this money shall be deducted from their salaries ; and that is in fact what was done in this city, and sought to be done in this case. Contracts were made with the teachers to pay them a certain salary, and from that salary as agreed to be paid one per cent. was deducted and devoted to this purpose. A teacher's salary is his property ; he has a right under the constitution to use that salary for his own benefit or for the benefit of the others as he sees fit. If, he thinks it best to provide for old age he may do so, but if he prefers to spend his money as he earns it, it is his right under the constitution to do that.

In Palmer v. Tingle, 55 Ohio St., 423 [45 N. E. Rep., 313], the Supreme Court say, in the first two paragraphs of the syllabus :

" The inalienable right of enjoying liberty and acquiring property guaranteed by the first section of the bill of rights of the constitution, embraces the right to be free in the enjoyment of our faculties, subject only to such restraints as are necessary for the common welfare.

" Liberty to acquire property by contract, can be restrained by the general assembly only so far as such restraint is for the common welfare and equal protection and benefit of the people, and such restraining statute must be of such a character that a court may see that it is for such general welfare, protection and benefit. The judgment of a general assembly in such cases is not conclusive."

In State v. Gardner 58 Ohio St., 599 [51 N. E. Rep., 136; 41 L. R. A., 689 ; 65 A. S. R., 785], the Supreme Court say, in the first paragraph of the syllabus :

State v. Hubbard.

"The right to labor and enjoy the rewards thereof is a natural right which may not be unreasonably interfered with by legislation."

And on page 610 of the opinion, which was delivered by Judge Spear, the court say:

"Our bill of rights prohibits the granting of privileges to one which are denied to others of the same class, and the imposition of restrictions or burdens upon certain citizens from which others of the same class are exempt, and Sec. 26, Art. 2, of the constitution requires that all laws of a general nature shall have a uniform operation throughout the state.

A statute, therefore, which imposes special restrictions or burdens, or grants special privileges to persons engaged in the same business under the same circumstances, cannot be sustained, because it is in contravention of the equal right which all are entitled to in the enforcement of laws and in the enforcement of liberty, and in the enjoyment of an equal right in the acquisition and possession of property, and so is not of uniform operation."

Under this act, a female teacher is not entitled to retire and be put on the pension list upon her own motion until she has taught thirty successive years, and a male teacher is not so entitled until, he has taught thirty-five years, but either may be retired by the board at the end of twenty years on account of disability so that the possibility that one from whose salary this percentage is deducted may ever enjoy any of the benefits of this fund so created is very remote, and as shown by the evidence in this case, there has only been one teacher put upon the permanent pension list since the law went into effect, and from computations and calculations it appears that only a very few will be entitled to be put upon the permanent pension list within the next five years. The amount so paid by the plaintiff, or by any other teacher, may at some time result in a benefit to him, but the chances are that it will not. In our judgment, each individual teacher has the right to draw his full salary and spend it or save it as he sees fit, and that is his right as a citizen under the constitution.

It is urged that the relator has been estopped by his conduct from attacking the validity of this act. We think that is not sustained by the evidence: the evidence shows that he has been constantly opposed to the enforcement of the law from its enactment; that he has apparently never lost an opportunity to state his opposition; that he was elected a member of the pension board by a vote of three-fourths of the teachers as their representative in opposing the enforcement of the act. He accepted an appointment it is true as a teacher and was notified in writing that his appointment was subject to the provisions of law and the rules of the board which might be enforced relating to the appointment and compensation of teachers, but the accepting of such an appointment does not estop him from attacking the validity or constitutionality of any act that may be in the statute books. He accepted the appointment subject only to the valid and constitutional laws of the state. The plaintiff has done nothing to stop him from raising this question.

We are of the opinion that this act is unconstitutional and void, and therefore, the prayer of the petition will be granted and a writ of mandamus will issue as therein prayed for.